**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

```
_____
                               )
Pla-Fit Franchise, LLC,        )
                               )
         Plaintiff,            )
                               )   Civil Action No. _____
     v.                        )
                               )   INJUNCTIVE RELIEF SOUGHT
Jason Cole,                    )
                               )
         Defendant.            )
_____)
```

# COMPLAINT

## INTRODUCTION

Plaintiff Pla-Fit Franchise, LLC ("Planet Fitness") has recently learned that employee Jason Cole ("Cole") has stolen its confidential information. Cole has admitted to stealing at least one confidential e-mail and storing it on his personal computer, even after receiving specific instructions to delete the e-mail and an explanation of its privileged nature. Cole's conduct suggests that he has likely stolen other highly sensitive personal and financial information about Planet Fitness employees, to which he has access in his role as Payroll Manager. Given that Cole has a history of threatening and unstable behavior, there is an exceptionally high risk that Cole will do something drastic with this information after he learns of his termination from Planet Fitness on August 10, 2015. Planet Fitness seeks injunctive relief to protect hundreds of its employees' personal information and to prevent the further misuse of Planet Fitness information.

Planet Fitness does not have reason to believe that Laura Shaw ("Shaw") has herself stolen confidential information. However, she resides with Cole, and Cole has sent her

confidential information in the past. Thus, Planet Fitness seeks to have the Temporary Restraining Order provide for the seizure and inspection of Planet Fitness property in her possession.

## **PARTIES**

1. Plaintiff Pla-Fit Franchise, LLC is a limited liability corporation formed under the laws of the State of New Hampshire with its principal place of business at 26 Fox Run Rd., Newington, New Hampshire 03801.

2. Defendant Jason Cole is an individual and, upon information and belief, a resident of Maine residing at 323 Depot Rd., Lebanon, ME 04027.

## **JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter under 28 U.S.C. §1331 because this case arises under the Computer Fraud and Abuse Act, 18 U.S.C. §1030(g). The Court also has jurisdiction over this matter under 28 U.S.C. §1332, because the matter is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b)(1).

## **FACTS**

### *Background Information on Planet Fitness*

5. Planet Fitness is a franchise fitness company with approximately 950 franchise clubs.

6. Pla-Fit Franchise, LLC (Pla-Fit) is the entity that employs all Planet Fitness US-based employees, including the 172 employees at its New Hampshire headquarters (of whom Cole is one) and 715 employees across 56 clubs.

*Planet Fitness Hires Jason Cole*

7. On July 18, 2014, Planet Fitness offered Cole the position of Payroll Manager, effective July 28, 2014.

8. Cole accepted the position on July 22, 2014.

9. As the Payroll Manager, Cole is responsible for managing all aspects of centralized payroll processing and reporting for corporate headquarter and corporate club populations throughout the U.S and Canada. He reports directly to the head of Human Resources and manages a team of two payroll specialists. He has access to all employees' Social Security numbers, home addresses, bank account information, compensation, and other personal information.

*Employment Agreements*

10. Upon joining Planet Fitness, Cole agreed to be bound by Planet Fitness' Confidentiality, Inventions and Non-Competition Agreement ("Confidentiality Agreement").

11. Section 2.1 of the Confidentiality Agreement provides:

> I agree that all Confidential Information . . . to which I have access as a result of my employment . . . shall remain the sole and exclusive property of the company . . . I agree that, except as required for the proper performance of my regular duties for the company, as expressly authorized in writing in advance . . . or as required by applicable law, I will never, directly or indirectly, use or disclose any Confidential Information. I understand and agree that this restriction shall continue to apply after the termination of my employment for any reason.

12. The Confidentiality Agreement defines Confidential Information as "any and all information of the company . . . whether or not in writing, that is not generally known by others with whom the Company or any of its Affiliates competes or does business, or with whom it plans to compete or do business." It also explains that "Confidential Information also includes any information that the Company . . . may receive . . . with any understanding, express or implied, that the information would not be disclosed."

13. Section 2.2 of the Confidentiality Agreement provides:

> I agree that all documents, records, and files in any media of whatever kind and description, relating to the business, present or otherwise of the company . . . shall be the sole and exclusive property of the company. . . I will not copy any Document or remove any Documents or copies or derivative thereof from the premises of the company. . . I will safeguard and return to the company immediately upon termination of my employment . . . all documents and other property of the company.

14. The Confidentiality Agreement contains a choice of law provision designating New Hampshire law as governing the Agreement.

15. Cole also agreed to be bound by Planet Fitness' Security Awareness & Acceptable Use Policy ("Security Policy"). This policy provides that all Planet Fitness "systems are to be used for business purposes in service of the interests of the Company and of our clients and customers in the course of normal operations." It also prohibits "effectuating security breaches or disruptions of network communications." Security breaches are defined to include "accessing data of which the employee is not expressly authorized to access."

16. On April 15, 2015, Cole agreed to follow Planet Fitness' Acceptable Use Policy – Administrative Rider ("Administrative Rider"). The Administrative Rider provides guidelines for administrators, like Cole, who have been granted an elevated level of permissions to Planet Fitness' Business Systems and Data.

17. By signing the Administrative Rider, Cole agreed that "Any breach of . . . trust by misusing privileges or failing to maintain the highest level of professional integrity will be considered gross misconduct by the company." He also agreed that "Administrators must not use the[ir] elevated privileges for purposes other than those expressly required as part of their daily responsibilities. . ."

18. In addition to the above policies, to protect company information, Planet Fitness provides employees with a laptop and docking station. Employees who need to work away from the office are required to use their laptop as opposed to any personal computer.

### *ADP Payroll*

19. To facilitate payroll processing, Planet Fitness uses the computer program ADP Payroll. To be able to process paychecks, make direct deposits, and produce tax reports, ADP stores highly confidential and personal information about all employees. This information includes, but is not limited to, employees' contact information, bank account information, Social Security numbers, and tax ID numbers.

20. Given the highly sensitive nature of the information stored in ADP, Pla-Fit keeps tight control on ADP access. Users are only allowed access to information related to their individual responsibilities. For example, payroll employees have personalized access to payroll information while Human Resources employees may have access to certain information related to employee benefits. Access is further customized to each user and passwords are required for entry into the system.

21. As the Payroll Manager, and what ADP refers to as a "Super User," Cole has unfettered access to all information stored in ADP. He has the ability to run searches to filter for certain kinds of information and can download reports.

### ***Cole Violates Company Policy and Downloads Privileged Company Information onto His Personal Computer***

22. At 5:39 a.m. on June 3, 2015, Jason Cole received an e-mail that was sent to him by mistake ("June 3 e-mail") and intended for another individual named Jason Cole.

23. The June 3 e-mail was an attorney-client privileged exchange between Planet Fitness' Chief Administrative Office and General Counsel Richard Moore and outside attorney Jason E. Cole. It concerned revisions to a settlement agreement.

24. Within an hour after receiving the June 3 e-mail, Cole e-mailed Karen Avery, the Planet Fitness Director of Human Resources, and told her that he had received an e-mail that he believed was sent to him in error.

25. Upon receiving Cole's e-mail, Avery responded "Would you please completely delete the email that was sent to you mistakenly? Make sure it is out of your mailbox system entirely?" to which Cole replied, "I deleted both of them. When I read the first line I stopped reading it!"

26. That same morning, members of the Planet Fitness information technology department checked Cole's computer to ensure that the e-mail had been removed to maintain its privilege. The e-mail was removed and Planet Fitness considered the matter resolved.

27. On July 30, 2015, the issue involving the e-mail resurfaced. On that date, Cole met with Alison Johnson, Planet Fitness' Associate General Counsel, and Avery.

28. At the meeting, Cole was very agitated and stated that he was very upset that Shaw, with whom on information and belief he is romantically involved and resides, had been terminated from her employment at Planet Fitness the day before. He also expressed concern that he was about to be terminated.

29. Then, with no connection to the subjects then under discussion, Cole complained that on June 3 IT had "swarmed" him to make sure the mistakenly sent message was deleted from his computer but that he had downloaded it to his home computer and kept a copy of it.

30. Cole's comment surprised Avery as this admission stood in direct contradiction to his previous affirmation that he had immediately deleted the message after he received it.

31. Although the June 3 e-mail was only a communication of legal strategy by Planet Fitness and legal counsel, Cole mistakenly believed that the information contained in the e-mail was insidious.

32. Cole stated that the June 3 e-mail was "damning" from a business and political perspective and threatened to release it publicly right before Planet Fitness went public, in an attempt to disrupt the IPO.

33. Avery and Johnson explained to Cole that the e-mail was not concerning. When he made it clear that he had already made up his mind and was being unreasonable, they suggested that they end the conversation as they had arrived at an impasse.

34. Cole's July 30 admission and general threatening manner was concerning to Avery and Johnson.

35. Avery had recently discovered that Cole had forwarded Shaw another e-mail intended only for the Planet Fitness Human Resources management team (of which Shaw was not a part). She had also learned that Cole had shared confidential information about other employees' performance plans with Shaw.

36. Additionally, Avery had been receiving troubling reports about Cole from the public. In late May, Avery was contacted by the Lebanon, Maine fire chief, a Planet Fitness health club member, who expressed concern that Cole could have access to his personal information. The caller claimed that Cole had a history of stalking and harassment and was nervous that Cole may misuse the caller's personal information.

37. Another Planet Fitness member posted accusations on the company's Facebook page that Cole was using Planet Fitness information and computers to harass and intimidate people.

38. In addition to these general complaints, when cleaning out Shaw's desk after her termination, Avery found a letter from Shaw's spouse referencing a no-contact order that he was seeking against Cole to prevent Cole from being near his children, and claiming that Cole had been banned from local public schools.

39. It was clear to Avery and Johnson that Cole was willing and able to misappropriate company information.

40. Shaw may also have confidential Planet Fitness information on her computer, as Cole has a history of sending her confidential information, and because she resides with Cole. She may also have physical custody of computers at their shared residence on which Cole has stored confidential information.

41. Based on Cole's admissions and conduct at the July 30 meeting, there was immediate concern that Cole had downloaded other confidential information to which he had access, such as ADP records, to his personal computer. These reports could contain personally identifiable information about approximately 900 Planet Fitness employees, including the executive team.

42. Based on his disrespect for company policies related to confidential information, history of poor follow through on assignments, and attendance issues, Planet Fitness intends to terminate Cole on August 10, 2015.

## COUNT I (Breach of Contract)

43. Planet Fitness incorporates by reference the allegations set forth above.

44. As a condition of his employment with Planet Fitness, Cole executed Planet Fitness' Confidentiality, Inventions and Non-Competition Agreement; Planet Fitness' Security Awareness & Acceptable Use Policy; and Acceptable Use Policy – Administrative Rider. These policies prohibit, among other things, the theft and/or misuse of confidential information.

45. By his acts, Cole has repeatedly and willfully breached his promise to not steal or misuse Planet Fitness' confidential information.

46. Cole's breaches of these contracts have caused Planet Fitness to suffer substantial damages.

## COUNT II (Conversion)

47. Planet Fitness incorporates by reference the allegations set forth above.

48. Planet Fitness has at all times possessed a property interest in and right to its confidential e-mails and the personal and financial information contained in the ADP Payroll Software.

49. Planet Fitness has demanded that all confidential information be returned.

50. By his acts, Cole has converted Planet Fitness property for his own personal use.

51. Cole's breaches of these contracts have caused Planet Fitness to suffer substantial damages.

## COUNT III (Computer Fraud and Abuse Act)

52. Planet Fitness incorporates by reference the allegations set forth above.

53. On information and belief, Cole knowingly and with intent to defraud, accessed a Planet Fitness protected computer without authorization and/or exceeded his authorized access and obtained information that is of value, in violation of the Computer Fraud and Abuse Act.

54. As a result of the foregoing, Planet Fitness has suffered over $5,000 in loss and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, plaintiff Planet Fitness respectfully requests that this Court:

a) temporarily, preliminarily and permanently enjoin Cole and Shaw from using or disseminating Planet Fitness' confidential information;

b) enter an order requiring Cole and Shaw to return all company property;

c) enter an order requiring Cole and Shaw to return all Planet Fitness Confidential Information in their possession;

d) enter an order requiring Cole and Shaw to surrender all electronic devices capable of storing any information belonging to Planet Fitness, including but not limited to personal computers, hard drives, portable storage devices, smartphones, and other electronic communications, computing, or storage devices in their possession so that Planet Fitness may confirm that all Confidential Information has been destroyed;

e) enter an order requiring Cole and Shaw to surrender all hard copy documents that include any information belonging to Planet Fitness;

f) award Planet Fitness damages and reasonable attorneys' fees and costs; and

g) award such other relief as the Court may deem just and proper.

Respectfully Submitted,

Pla-Fit Franchise, LLC.

By its attorneys,

August 10, 2015


/s/ Rebecca Sivitz
Mark W. Batten (BBO # 566211)
Rebecca Sivitz (BBO #684347)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9600
mbatten@proskauer.com
rsivitz@proskauer.com


/s/ Adrianne E. Fouts
Adrianne E. Fouts
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101-2480
(207) 772-1941
afouts@dwmlaw.com