IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

_____
                                    )
Pla-Fit Franchise, LLC,             )
                                    )
             Plaintiff,             )
                                    )   Civil Action No.
        v.                          )
                                    )
Jason Cole,                         )
                                    )
             Defendant.             )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EX PARTE
TEMPORARY RESTRAINING ORDER**

## I.   INTRODUCTION

Plaintiff Pla-Fit Franchise, LLC's ("Planet Fitness") employee, defendant Jason Cole ("Cole") has demonstrated, and admitted to, abuse of Planet Fitness' Confidential Information. On July 30, 2015, he admitted to stealing a confidential email from Planet Fitness' systems and storing it on his personal computer, after having assured the company that he had deleted and not even completely read it. He made this unexpected disclosure apparently because he thought it would give him leverage in ongoing discussions with the company's employment counsel and Human Resources director about shortcomings in his job performance. He threatened to release the e-mail in an attempt to interfere with Planet Fitness' IPO. Planet Fitness believes that Cole's theft does not stop there, and that he has likely stolen other highly sensitive personal and financial information about Planet Fitness employees, to which he has access in his role as Payroll Manager, which includes employees' Social Security numbers, bank account information, and other personal information. Given Cole's history of threatening and unstable

behavior, there is an exceptionally high risk that he will do something drastic after he learns of his termination from Planet Fitness on August 10, 2015. Planet Fitness seeks injunctive relief to protect hundreds of its employees' personal information and to prevent the further misuse of Planet Fitness information.

Planet Fitness seeks an Emergency Ex-Parte Temporary Restraining Order ordering the seizure of Cole's electronic devices so that Planet Fitness may conduct a search to identify any of its information contained thereon. The confidential information at issue in this case is contained in digital files. Cole could easily put this information on a portable drive, hide it online, or transfer it to another device. Speedy and unexpected seizure is the only way to prevent Cole from misusing Planet Fitness' stolen information.

## II.     FACTS

### *Planet Fitness and Cole*

Planet Fitness is a leading franchise fitness company with approximately 950 franchise clubs across the United States and internationally. Affidavit of Karen Avery ("Avery Aff.") at ¶ 2. All Planet Fitness US-based employees, including the 172 employees at its New Hampshire headquarters (of whom Cole is one) and 715 employees across 56 clubs, are employed by Pla-Fit Franchise, LLC (Planet Fitness). *Id.* at ¶ 3.

On July 18, 2014, Planet Fitness offered Jason Cole the position of Payroll Manager, effective July 28, 2014. He accepted the position on July 22, 2014. *Id.* at ¶ 4.

### *Cole's Employment Agreements and Planet Fitness' Commitment to Protect Confidential Information*

Planet Fitness takes data security extremely seriously. To that end, employees, such as Cole, are asked to sign a series of agreements confirming their obligation to protect confidential

information. Shortly after accepting the position with Planet Fitness, Cole executed a series of employment agreements including, but not limited to, Planet Fitness' Confidentiality, Inventions and Non-Competition Agreement ("Confidentiality Agreement"), Security Awareness & Acceptable Use Policy ("Security Policy"), and then later, Planet Fitness' Acceptable Use Policy Administrative-Rider. *Id.* at ¶ 7-9.

> The Confidentiality Agreement, which Cole agreed to follow, provides that:
>
>> I agree that all Confidential Information . . . to which I have access as a result of my employment . . . shall remain the sole and exclusive property of the company. . . I agree that, except as required for the proper performance of my regular duties for the company, as expressly authorized in writing in advance . . . or as required by applicable law, I will never, directly or indirectly, use or disclose any Confidential Information. I understand and agree that this restriction shall continue to apply after the termination of my employment for any reason.

*Id.* at ¶ 7, Exhibit ("Ex") C. The Confidentiality Agreement defines Confidential Information as "any and all information of the company . . . whether or not in writing, that is not generally known by others with whom the Company or any of its Affiliates competes or does business, or with whom it plans to compete or do business." *Id. at* Ex. C. It also explains that "Confidential Information also includes any information that the Company . . . may receive . . . with any understanding, express or implied, that the information would not be disclosed." *Id.* The Confidentiality Agreement also provides:

> I agree that all documents, records, and files in any media of whatever kind and description, relating to the business, present or otherwise of the company . . . shall be the sole and exclusive property of the company. . . I will not copy any Document or remove any Documents or copies or derivative thereof from the premises of the company. . . I will safeguard and return to the company immediately upon termination of my employment . . . all documents and other property of the company.

*Id.* The Confidentiality Agreement contains a choice of law provision designating New Hampshire law as governing the agreement. *Id.*

The Security Policy that Cole agreed to abide by provides that all Planet Fitness "systems are to be used for business purposes in service of the interests of the Company and of our clients and customers in the course of normal operations." *Id.* at Ex. D.  It also prohibits "effectuating security breaches or disruptions of network communications." *Id.*  Security breaches are defined to include "accessing data of which the employee is not expressly authorized to access." *Id.*

Cole executed a related agreement, Planet Fitness' Acceptable Use Policy – Administrative Rider ("Administrative Rider"), on April 15, 2015. *Id.* at ¶ 9; Ex. E.  The Administrative Rider provides guidelines for administrators, like Cole, who have been granted an elevated level of permissions to Planet Fitness' Business Systems and Data. *Id.* at Ex. E.  By signing the Administrative Rider, Cole agreed that "Any breach of . . . trust by misusing privileges or failing to maintain the highest level of professional integrity will be considered gross misconduct by the company." *Id.*  He also agreed to "not use [his] elevated privileges for purposes other than those expressly required as part of [his] daily responsibilities. . ." *Id.*

In the interest of protecting company information, in addition to following the above policies, Planet Fitness provides employees with a laptop and docking station. *Id.* at ¶ 10. Employees who need to work away from the office are required to use their laptop as opposed to any personal computer. *Id.*  Cole was given a laptop. *Id.* at ¶ 11.

### *Cole's Responsibilities*

As the Payroll Manager, Cole is responsible for managing all aspects of centralized payroll processing and reporting for corporate headquarters and corporate club populations throughout the U.S and Canada. *Id.* at ¶ 5; Ex. B.  He reports directly to the head of Human Resources and manages a team of two payroll specialists. *Id.* at ¶ 6.  He has access to all

employees' Social Security numbers, home addresses, bank account information, compensation, and other personal information. *Id.* at ¶ 5.

A significant part of Cole's job is utilizing the computer program ADP Payroll to process paychecks, make direct deposits, and produce tax reports. *Id.* at ¶ 12. Given the highly sensitive nature of the information stored in ADP, Planet Fitness keeps tight control on ADP access. *Id.* at ¶ 13. Users are only allowed access to information related to their individual responsibilities. *Id.* For example, payroll employees have personalized access to payroll information while Human Resources employees may have access to certain information related to employee benefits. *Id.* Access is further customized to each user and passwords are required for entry into the system. *Id.* However, Cole, as the Payroll Manager, is what ADP refers to as a "Super User," and has unfettered access to all information stored in ADP. *Id.* at ¶ 14. He has the ability to run searches to filter for certain kinds of information and can download reports. *Id.*

### Cole's Misuse of Confidential Information

At 5:39 a.m. on June 3, 2015, Cole received an e-mail that was sent to him by mistake ("June 3 e-mail") and intended for another individual named Jason E. Cole. *Id.* at ¶ 15. The e-mail was an attorney-client privileged exchange between Planet Fitness' Chief Administrative Officer and General Counsel Richard Moore and outside attorney Jason E. Cole. *Id.* at ¶ 17. It concerned revisions to a settlement agreement and was clearly confidential and not intended for Cole. *Id.*

Within an hour of receiving the June 3 e-mail, Cole e-mailed Karen Avery, the Planet Fitness Director of Human Resources, and told her that he had received an email that he believed was sent to him in error. *Id.* at ¶ 15. Upon receiving Cole's email, Avery responded "Would you please completely delete the email that was sent to you mistakenly? Make sure it is out of

your mailbox system entirely?" to which Cole replied "I deleted both of them. When I read the first line I stopped reading it!" *Id.* at ¶ 16, Ex. F. That same morning, members of Planet Fitness' information technology department checked Cole's computer to ensure that the e-mail had been removed, to maintain its privilege. *Id.* at ¶ 19. The e-mail appeared to be gone and Planet Fitness considered the matter resolved. *Id.*

However, on July 30, 2015, the issue involving the e-mail resurfaced. On that date, Cole met with Ali Johnson, Planet Fitness' Associate General Counsel, and Avery. *Id.* at ¶ 20. At the meeting, Cole stated that he was very upset that Laura Shaw, with whom on information and belief he is romantically involved and resides, had been terminated from her employment at Planet Fitness the day before. *Id.* at ¶ 21. He also expressed concern that he was about to be terminated. *Id.* Then, with no connection to the subjects then under discussion, Cole complained that after he got the June 3 email by mistake, IT had "swarmed" him to make sure the message was deleted from his computer but that he had downloaded it to his home computer and kept a copy. *Id.* at ¶ 22. This comment surprised Avery as this admission stood in direct contradiction to his previous affirmation that he had immediately deleted the message and not even read it. *Id.* at ¶ 23. Cole had no legitimate reason to have the June 3 e-mail on his personal computer. He had a Planet Fitness work laptop and all business was supposed to be conducted on that computer. *Id.* at ¶ 10-11. Moreover, when the Information Technology Department inspected Cole's work computer, they did not find the e-mail, meaning that Cole had either downloaded the email to a personal drive or e-mailed the document to himself within hours of receipt. *Id.* at ¶ 19. It was clear that Cole had intentionally taken this confidential information and saved it to his personal computer in direct violation of multiple Planet Fitness policies.

Although the June 3 email was only a communication of legal strategy between Planet Fitness and legal counsel, Cole unreasonably and mistakenly believed that the information contained in the email was insidious. *Id.* at ¶ 24. He stated that the email was "damning" from a business and political perspective and threatened to release it publicly right before Planet Fitness went public in an attempt to disrupt the IPO. *Id.* Avery and Johnson explained to Cole that the e-mail was not concerning. When it became clear that he had already made up his mind and was being unreasonable, they suggested that they end the conversation as they were at an impasse.

Cole's July 30 admission and general threatening manner was particularly alarming in light of pre-existing concerns over Cole's misuse of confidential information. *Id.* at ¶ 25. Avery had recently discovered that Cole had forwarded Shaw another e-mail intended only for the Planet Fitness Human Resources management team (of which Shaw was not a member) and had been sharing information about other employees' performance plans. *Id.* Additionally, Avery and Johnson had been receiving troubling reports about Cole from the public. *Id.* at ¶ 26. In late May, Avery was contacted by the Lebanon, Maine fire chief, a Planet Fitness health club member, who was worried that Cole might misuse his personal information. *Id.* The caller claimed that Cole had a history of stalking and harassment and that he was nervous that Cole may misuse his personal information. *Id.* Avery investigated the complaint at the time, but was unable to confirm any details. Another Planet Fitness member posted on the company's Facebook page accusations that Cole was using Planet Fitness information and computers to harass and intimidate people. *Id.* at ¶ 27; Ex. G. In addition to these general complaints, when cleaning out Shaw's desk after her termination, Avery found a letter from her former spouse referencing a no-contact order that he was seeking against Cole to prevent Cole from being near his children and claiming that Cole had been banned from local public schools. *Id.* at ¶ 28.

It was clear to Avery and Johnson that Cole was willing and able to steal company information. Based on Cole's admissions and conduct at the July 30 meeting, there was immediate concern that Cole had downloaded other confidential information to which he had access, such as ADP records, to his personal computer. *Id.* at ¶ 29. Based on the above, as well as a history of poor follow through on assignments and attendance issues, Planet Fitness intends to terminate Cole on August 10, 2015. *Id.* at ¶ 30. Planet Fitness believes that Cole has confidential information, including personally identifiable information for approximately 900 employees, on his personal computer. Additionally, it believes that Shaw may also have confidential Planet Fitness information on her computer, as Cole has sent her confidential information in the past. She may also have physical custody of computers at their shared residence on which Cole has stored confidential information.

## ARGUMENT

### A. *Standard for Relief*

In determining whether to issue a temporary restraining order ("TRO") pursuant to Fed. R. Civ. P. 65, courts will consider the likelihood of success on the merits, the risk of irreparable harm to the moving party if the TRO is not issued, the balance of equities, and the public interest. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F.Supp. 68, 71 (D. ME 1993).

### B. *Planet Fitness is Entitled to an Injunction*

#### (i) Planet Fitness is Likely to Succeed on the Merits

**1. Breach of Contract**

By downloading the June 3 e-mail to his personal computer and, on information and belief, stealing other confidential employee information, including potentially from ADP, Cole

has breached multiple contracts with Planet Fitness.  To succeed on a breach of contract claim, a claimant must first show the existence of a valid contract -- one that represents a meeting of the minds, is for consideration and contains mutuality of obligations.  *Dom J. Moreau & Son, Inc. v. Federal Pacific Electric Co.* 378 A.2d 151 (D. ME 1977), *citing Akerley v. Lammi*, 217 A.2d 396, 398 (Me.1966).  It then must show breach of a material contract term, causation, and damages.  *Wetmore v. MacDonald, Page, Schatz, Fletcher & Company, LLC.*, 476 F.3d 1 (1st Cir. 2007).[1]  Planet Fitness will be able to establish each of these elements.

For the purposes of this motion, Cole was subject to at least three relevant contracts: (1) the Confidentiality Agreement, (2) the Security Agreement, and (3) the Administrative Rider.  Cole reviewed all contract and signed them.  In doing so, he represented that he had read and understood each agreement and agreed to abide by the terms outlined therein.  Thus, there was a meeting of the minds between Cole and Planet Fitness.  As far as consideration, Cole agreed that he would not steal or misuse company information and Planet Fitness agreed to continue to employ Cole.  Finally, there was a mutuality of obligation, as Cole was obligated to not misappropriate or misuse company information and Planet Fitness agreed to not terminate Cole for refusing to execute the agreement.

Cole breached all three contracts by stealing the June 3 e-mail and, on information and belief, stealing other company information, including, but not limited to, ADP Payroll records containing employees' personal and financial information.  By executing the Confidentiality Agreement, Cole "agree[d] that all documents, records, and files in any media of whatever kind

---

[1] The Confidentiality Agreement contains a choice of law provision choosing New Hampshire law.  New Hampshire law relating to breach of contract is not meaningfully different than Maine law.  *See Ameriswiss Technology, LLC v. Midwat Line of Illinois Inc.*, 888 F. Supp. 2d 197 (2012) (explaining that under New Hampshire law "A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds" and ""[a] breach of contract occurs when there is a failure without legal excuse[ ] to perform any promise which forms the whole or part of a contract.")  Thus, the analysis of Cole's breach is the same under Maine and New Hampshire law.

and description, relating to the business, present or otherwise of the company . . . shall be the sole and exclusive property of the company" and that he would not "copy any Document or remove any Documents or copies or derivative thereof from the premises of the company." He directly breached this clause of the Agreement by removing the June 3 e-mail from his work computer and transferring it to his personal computer. Additionally, by downloading payroll data and other information about his coworkers, Cole again violated this agreement.

Through the Security Agreement, Cole agreed that "systems are to be used for business purposes in service of the interests of the Company and of our clients and customers in the course of normal operations" and that he would not "effectuat[e] security breaches or disruptions of network communications." Cole effectuated a security breach and used the Planet Fitness systems for a purpose outside the interest of the company when he either e-mailed the July 3 e-mail to himself, or removed it from Planet Fitness systems via a drive. He has also misused systems by stealing other information. He at no time acted in the interest of Planet Fitness, clients, or customers.

By agreeing to the Administrative-Rider, Cole acknowledged that "[a]ny breach of . . . trust by misusing privileges or failing to maintain the highest level of professional integrity will be considered gross misconduct by the company" and promised to "not use [his] elevated privileges for purposes other than those expressly required as part of [his] daily responsibilities. . ." By taking the June 3 e-mail and then lying about deleting it, Cole failed to act with any professional integrity, let alone maintain the highest level of professional integrity. Any other theft of company property, especially co-workers' financial and personal information, would similarly constitute a violation of the Administrative-Rider.

These breaches have caused significant damage to Planet Fitness. First, Cole has invaded the privacy of Planet Fitness employees and undermined their trust in the company. The company also will potentially face significant damage if information is released or misused. Additionally, Planet Fitness will have to spend time and money to determine the scope of Cole's data breach and to undo any damages as of yet uncovered. There are also likely other significant damages Planet Fitness will uncover in the course of discovery. Thus, Planet Fitness will likely succeed on its breach of contract claim.

**2. Conversion**

By downloading the June 3 e-mail onto his personal computer and removing other information from company systems, Cole is liable for conversion. "The gist of conversion is the invasion of a party's possession or right to possession." *General Motors Acceptance Corp. v. Anacone*, 197 A.2d 506, 524 (Me.1964). To succeed on a conversion claim, the Plaintiff must show (1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender. *Chiapetta v. LeBlond*, 505 A.2d 783 (Me. 1986).

Planet Fitness will be able to satisfy the elements of a conversion claim. First, Planet Fitness has a clear property interest in its company email, especially attorney-client privileged communications. It also has a property interest in the ADP system and information contained therein. This right to possession existed at all times, including the time that Cole took this information off Planet Fitness systems and put it on his personal computer. Additionally, even though Cole never acquired the information lawfully, so it was not required to do so, Planet Fitness demanded that Cole return or delete the June 3 e-mail. In response, Cole initially lied

and said he was not in possession, and then later admitted that he was in possession and refused to return the property. Thus, Planet Fitness will succeed on its conversion claim.

### 3. Computer Fraud and Abuse Act ("CFAA")

There is no question that Cole took the June 3 email and has likely taken other Planet Fitness information. He removed this information from a Planet Fitness owned and issued computer that is used to communicate with Planet Fitness employees and Planet Fitness clubs in other states and to issue paychecks to employees across multiple states. Cole had no entitlement to this information and was well aware that it was not intended for his personal use. Thus, he has done exactly what the CFAA prohibits: he accessed a computer that is used in interstate commerce or communication and obtained information,18 U.S.C. 1030(a)(2), and knowingly and with an intent to defraud, accessed a protected computer and thereby furthered his fraud and obtained things of value – Planet Fitness employees' personal contact information and personal financial information, including account numbers and Social Security numbers.

The improper access here is far more egregious than other conduct that the First Circuit has held to violate the CFAA. For example, in *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001), the defendant used a "scraper" software program to collect pricing information from a competitor's web site. The pricing information collected was available to the general public, although accompanied by tour codes that were only meaningful to those with knowledge of the plaintiff's practices. *Id.* at 579. The district court granted a preliminary injunction, reasoning that the collection of the information, although available to the public, exceeded the plaintiffs "reasonable expectations" of how the information would be used. *Id.* at 580. Here, in contrast, Cole accessed Planet Fitness' computers to collect decidedly nonpublic information for the purpose of using it as his own. He used the June 3 e-mail in a misguided

attempt to threaten Planet Fitness. As for the other information, Planet Fitness will likely be able to show that he intends to sell it, use it to stalk and harass employees, use it to threaten Planet Fitness or for some other unauthorized purpose.

Planet Fitness will demonstrate that Cole knowingly accessed a protected computer with intent to defraud and obtained a thing of value in furtherance of that scheme, within the meaning of 18 U.S.C. §1030(a)(4), or at a minimum that he improperly accessed a protected computer and retrieved information within the meaning of 18 U.S.C. §1030(a)(2), and in either case that Planet Fitness has suffered a loss within the meaning of 18 U.S.C. §1030(g).

### (ii) Plaintiff Has No Adequate Remedy at Law and will be Irreparably Harmed Unless an Injunction Issues

At the outset, the First Circuit affirmed entry of a preliminary injunction in *EF Cultural Travel* without an express showing of irreparable harm, concluding that the demonstrated likelihood of success on the merits on the CFAA claim was sufficient to support the injunction. 274 F.3d at 585. Thus, the CFAA claim here would independently justify a TRO.

Beyond the CFAA claim, Planet Fitness' irreparable injury is manifest. Cole has threatened to release the privileged and confidential June 3 e-mail in a misguided attempt to hurt Planet Fitness and upset its public offering. As other District Courts in the First Circuit have recognized, "If confidential information is allowed to be revealed, the damage will have already occurred, and there will be no way to assess plaintiff's losses." *Shipley Co., L.L.C. v. Kozlowski,* 926 F. Supp. 28, 29 (D. Mass. 1996). Further, Cole potentially has the personal addresses, phone numbers, Social Security numbers, bank account numbers, and tax ID numbers of approximately 900 Planet Fitness employees, including the entire executive team. This fact, coupled with Cole's past attempts to threaten the company, is very troubling. Additionally, as discussed above, Planet Fitness has received multiple reports that Cole has a history of harassing and

stalking others, has been banned from public schools, and is litigating a no-contact order. This is the last person who should have access to Planet Fitness employees' personal addresses and Social Security numbers. In the absence of an immediate injunction, there is nothing to stop Cole from selling, publishing, or otherwise misusing this highly sensitive information. This is the exact harm that TROs are intended to address. As the court explained in *Brookline v. Goldstein,* 388 Mass. 443, 447 (1980), injunctions "minimize the 'harm that final relief cannot redress,' by creating or preserving, insofar as possible, a state of affairs such that after the full trial, a meaningful decision may be rendered for either party."

        **(iii)**        **A Balancing of the Equities Favors Entry of an Injunction**

The tip in the balance of equities here could not be more decisive: there are no equities at all in Cole's position. He is in possession of information he stole from Planet Fitness and to which he has no right. That blatant misconduct must be stopped.

Additionally, an Emergency Ex-Parte Temporary Restraining Order ordering the seizure of Cole's electronic devices is the only way to ensure that Planet Fitness' property is protected. The confidential information at issue in this case is stored in electronic files. Cole could easily put this information on a portable drive, hide it online, or transfer it to another device. If he has any notice that Planet Fitness intends to retrieve its information it is likely that he will do exactly that. Thus, unexpected seizure is the only way to prevent Cole from misusing Planet Fitness' stolen information. Courts have recognized that this type of relief is both necessary and appropriate when a company's confidential information is at risk. *See Sioux Pharm, Inc. v. Eagle Labs., Inc.*, No. 13-1525, 2015 WL 3930168, at *2-3 (Iowa June 26, 2015) (approving of Plaintiff's "ex parte order from the district court authorizing [plaintiff] to seize the computer and telephone equipment of [competitor] and to engage in a walk-through of [competitor's] facility" to identify misappropriated confidential information); *Huawei Technologies Co. v. Motorola,*

*Inc.*, No. 11-CV-497, 2011 WL 612722, at *13 (N.D. Ill. Feb. 22, 2011) (granting preliminary injunction and ordering that plaintiff be permitted to hire "a qualified third party vendor to inspect . . . records and assets to ensure that all [its] Confidential Information has been removed and can no longer be recovered by any means"); *Dynamic Sports Nutrition, Inc. v. Roberts,* No. CIV.A. H-08-1929, 2008 WL 2775007, at *2 (S.D. Tex. July 14, 2008) (ordering defendant accused of misappropriating confidential information to "deliver every hard drive, back up drive, flash drive, compact disk or other storage medium, in his possession, custody and control" that he used to store information or communicate with third parties).[2]

### (iv) The Public Interest Favors an Injunction

The "public interest is not adversely affected by the protection of confidential information." *C.F. Bard, Inc. v. Intoccia*, 1994, WL 601994 at *3 (D. Mass 1994). This is especially true in situations where, as here, the information at issue is of no use to the public and cannot possibly be used for a proper purpose. The public is best served by enforcing contracts and preventing the potential identity theft of hundreds of Planet Fitness employees through the sale or leak of personal information.

## IV. CONCLUSION

For the foregoing reasons, the Motion for *Ex Parte* Temporary Restraining Order should be allowed.

Respectfully Submitted,

Pla-Fit Franchise, LLC.

By its attorneys,

---

[2] The facts in these cases are somewhat distinct from those at issue here as the extent of possession of confidential information was less of a question. However, like in those cases, there has been an admission by one defendant of possession of at least one highly confidential document.

August 10, 2015

/s/ Rebecca Sivitz
Mark W. Batten (BBO # 566211)
Rebecca Sivitz (BBO #684347)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
(617) 526-9600
mbatten@proskauer.com
rsivitz@proskauer.com


/s/ Adrianne E. Fouts
Adrianne E. Fouts
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101-2480
(207) 772-1941
afouts@dwmlaw.com