**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| Pla-Fit Franchise LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Jason Cole, )<br>)<br>Defendant. )<br>) | Civil Action No.: |

**AFFIDAVIT OF KAREN AVERY**

I, Karen Avery, hereby depose and state:

1.   I am the Human Resources Director of Pla-Fit Franchise LLC ("Planet Fitness"). I make this declaration on personal knowledge.

2.   Planet Fitness is a franchise fitness company with approximately 950 franchise clubs.

3.   Pla-Fit Franchise, LLC (Pla-Fit) is the entity that employs all Planet Fitness US-based employees, including the 172 employees at its New Hampshire headquarters (of whom Cole is one) and 715 employees across 56 clubs.

4.   On July 18, 2014, Planet Fitness offered Jason Cole ("Cole") the position of Payroll Manager, effective July 28, 2014. Cole accepted the position on July 22, 2014. A copy of Cole's executed offer letter is attached hereto as Exhibit A.

5.   As the Payroll Manager, Cole is responsible for managing all aspects of centralized payroll processing and reporting for corporate headquarter and corporate club populations throughout the U.S and Canada. He has access to all employees' Social Security numbers, home addresses, compensation, bank account information, compensation, and other personal information. A copy of Cole's job description is attached hereto as Exhibit B.

6.   Cole reports directly to me and manages a team of two payroll specialists.

7. Upon joining Planet Fitness, Cole signed Planet Fitness' Confidentiality, Inventions and Non-Competition Agreement ("Confidentiality Agreement"). A copy of the Confidentiality, Inventions and Non-Competition Agreement is attached hereto as Exhibit C.

8. Cole also signed Planet Fitness' Security Awareness & Acceptable Use Policy. A copy of the Security Awareness & Acceptable Use Policy is attached hereto as Exhibit D.

9. On April 15, 2015, Cole agreed to follow Planet Fitness' Acceptable Use Policy – Administrative Rider ("Administrative Rider"). A copy of the Acceptable Use Policy – Administrative Rider is attached hereto as Exhibit E. The Administrative Rider provides guidelines for administrators, like Cole, who have been granted an elevated level of permissions to Planet Fitness' Business Systems and Data.

10. To protect company information, Planet Fitness provides employees with a laptop and docking station. Employees who need to work away from the office are required to use their laptop as opposed to any personal computer.

11. Cole was given a company-owned personal laptop to use for company business over the course of his employment.

12. For payroll, Planet Fitness uses the computer program ADP Payroll. To be able to process paychecks, make direct deposits, and produce tax reports, ADP stores highly confidential and personal information about all employees. This information includes, but is not limited to, employees' contact information, bank account information, social security numbers, and tax id numbers.

13. Planet Fitness keeps tight control on ADP access. Users are only allowed access to information related to their individual responsibilities. Access is further customized to each user and passwords are required for entry into the system.

14. As the Payroll Manager, and what ADP refers to as a "Super User," Cole has unfettered access to all information stored in ADP. He has the ability to run searches to filter for certain kinds of information and can download reports.

15. On June 3, 2015, Cole forwarded me an email that he had been sent in error and said that he didn't believe that he was the intended recipient.

16. I responded, "Would you please completely delete the email that was sent to you mistakenly? Make sure it is out of your mailbox system entirely?" Cole replied, "I deleted both of them. When I read the first line I stopped reading it!" A copy of this e-mail exchange is attached hereto as Exhibit F.

17. The June 3 e-mail was an attorney-client privileged exchange between Planet Fitness' Chief Administrative Officer and General Counsel Richard Moore and outside attorney Jason E. Cole. It concerned revisions to a settlement agreement.

18. After receiving Cole's e-mail, I instructed the Planet Fitness Information Technology team to check Cole's computer to make sure that the e-mail had been deleted.

19. The Information Technology team inspected Cole's computer that morning. After doing so, they reported to me that the e-mail had been removed, at which point I considered the matter resolved.

20. On July 30, 2015, I participated in a meeting with Cole and Alison Johnson, Planet Fitness' Associate General Counsel.

21. Cole was very agitated and stated that he was very upset that Laura Shaw, with whom I believe he is romantically involved and resides, had been terminated from her employment at Planet Fitness the day before. He also expressed concern that he was about to be terminated.

22. Then, with no connection to the subjects then under discussion, Cole complained that on June 3 IT had "swarmed" him to make sure the mistakenly sent message was deleted from his computer but that he had downloaded it to his home computer and kept a copy of it.

23. Cole's comment surprised me because it stood in direct contradiction to his previous affirmation that he had immediately deleted the message.

24. Although the June 3 email was only a communication of legal strategy by Planet Fitness and legal counsel, Cole mistakenly stated that the June 3 email was "damning" from a

3

business and political perspective and threatened to release it publicly right before Planet Fitness went public in an attempt to disrupt the IPO.

25. Cole's comments were particularly concerning to me as I had recently discovered other times where Cole had misused confidential information. For example, Cole recently forwarded Shaw an e-mail that was only intended for members of the Human Resources management team. Additionally, after I terminated Shaw she asked about why she had not been put on a performance management plan, and named other employees on such plans. The only way she could have learned of these other employees is via a wrongful disclosure by Cole.

26. In late May, I started receiving troubling phone calls about Cole. For example, I was contacted by the Lebanon, Maine fire chief, a Planet Fitness health club member, who expressed concern that Cole could have access to his personal information. The caller claimed that Cole had a history of stalking and harassment and was nervous that Cole may misuse the caller's personal information.

27. Another Planet Fitness member posted accusations on the company's Facebook page that Cole was using Planet Fitness information and computers to harass and intimidate people. A copy of this Facebook post is attached hereto as Exhibit G.

28. In addition to these general complaints, when cleaning out Shaw's desk after her termination, I found a letter from Shaw's former spouse referencing a no-contact order that he was seeking against Cole because he did not want Cole near his children, and claiming that Cole had been banned from local public schools.

29. Based on Cole's admissions and conduct at the July 30 meeting, I was immediately concerned that Cole had downloaded other confidential information to which he had access, such as ADP records, to his personal computer.

30. Based on his disrespect for company policies related to confidential information, history of poor follow through on assignments, and attendance issues, Planet Fitness intends to terminate Cole on August 10, 2015.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 8, 2015         /s/ Karen Avery
                              Karen Avery